**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

ALICE BANKS                                                    PLAINTIFF

v.                              **Case No. 3:12-cv-00072-KGB**

PRUDENTIAL INSURANCE
COMPANY OF AMERICA                                             DEFENDANT

<u>**OPINION AND ORDER**</u>

Plaintiff Alice Banks brings this action against Prudential Insurance Company of America ("Prudential") to recover benefits under a life insurance policy covering her ex-husband, Jack McKelvey. Ms. Banks originally brought this action in state court as a breach of contract claim (Dkt. No. 2). Prudential removed the case to this Court, asserting that Ms. Banks's claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (Dkt. No. 1). This Court agreed that this case is governed by ERISA and set a schedule for the filing of the administrative record and the parties' briefs (Dkt. No. 22). The case is now before the Court on Ms. Banks's opening brief (Dkt. No. 23), Prudential's brief (Dkt. No. 24), and Ms. Banks's reply brief (Dkt. No. 25). For the reasons that follow, the Court finds that Prudential did not abuse its discretion in determining eligibility for benefits under the Plan and in denying Ms. Banks's claim for life insurance benefits.

## I.      Background

Ms. Banks is a former employee of Wal-Mart Stores, Inc. ("Wal-Mart"). In March 1995, while married to Mr. McKelvey, Ms. Banks enrolled in an ERISA-governed employee welfare benefit plan (the "Plan") sponsored by Wal-Mart and underwritten by Prudential. Although Prudential insured the Plan, Prudential apparently did not administer the Plan at that time. Prudential stated in a September 12, 2011, letter to the Arkansas Insurance Department that it

began administering the Plan on January 1, 2008 (AR. 144).[1]   It appears from the record that

CIGNA administered the Plan in 1995.

Ms. Banks, who enrolled under her former name as Alice McKelvey, was insured under

the Plan as an associate employee of Wal-Mart.  At the time of her enrollment, Ms. Banks while

completing the same form also enrolled for "Dependent Optional Life" insurance for Mr.

McKelvey, for spouse coverage, and LeAnne Mace, who is identified as "daughter" on the

enrollment form, for child coverage (AR. 178).  On the enrollment form for dependent optional

life insurance, as to spouse coverage, Ms. Banks designated herself as a beneficiary to receive

100% of the life insurance benefits and also designated Ms. Mace as a beneficiary to receive

100% of the life insurance benefits (*Id.*).

Ms. Banks and Mr. McKelvey divorced in 2003.  Prudential was not notified of the

divorce at that time (Dkt. No. 23, at 2).  However, Ms. Banks timely paid all premiums and the

policy remained in effect through Mr. McKelvey's death on April 11, 2011.  As discussed in

more detail below, Prudential sent letters to Mr. McKelvey's family members indicating that,

according to Prudential's records, Mr. McKelvey did not name a beneficiary.  Ms. Banks

repeatedly asserted that she was the named beneficiary of Mr. McKelvey's life insurance

benefits.  Prudential maintained in response that there was no beneficiary designation on file and

that it would pay the benefits in order of the highest-class survivor, per the Plan's provisions.  In

November 2011, Prudential paid the benefits to Mr. McKelvey's mother, at which time

Prudential still maintained that there was no beneficiary designation on file (AR. 8, 70).

Prudential apparently located the original beneficiary forms in December 2011 and produced

them to Ms. Banks's counsel on December 19, 2011 (AR. 71).  However, Prudential continued to

---

[1]   The administrative record, *see* Dkt. No. 19, was filed under seal, in conventional
format, and will be cited herein as "AR."

deny Ms. Banks's claim, stating in a December 30, 2011, letter to Ms. Banks's counsel that Mr.

McKelvey became the *de facto* owner of the policy after he and Ms. Banks divorced and that, at

the time of his death, Mr. McKelvey had not named a beneficiary for the policy.  Ms. Banks

subsequently filed suit.

### A.      The Plan

For the pertinent language of the Plan, the parties reference the Group Universal Life

("GUL") booklet-certificate, which became effective on January 1, 2005, and replaced any

previous certificates issued on the policy (AR. 280–317).   The Plan applied to all former

"Associates" who were insured under Group Contract No. G-43939-AR on the day their

employment terminated (AR. 283), which includes Ms. Banks.   The GUL booklet-certificate

includes a definition section that provides in part:

> **Associate:**  A person employed by the Employer, a proprietor or partner of the
> Employer.  The term also applies to that person for any rights after the insurance
> ends.
>
> **Associate Insurance:**  Insurance on the person of an Associate.
>
> ***
>
> **Covered Person** under the Universal Life Coverage including any of the
> additional provisions that may be part of the Universal Life Coverage:   An
> Associate who is insured for Associate Insurance under that Coverage; a
> Qualified Dependent for whom an Associate is Insured for Dependents Insurance
> under that Coverage.
>
> **Dependents Insurance:**  Insurance on the part of a dependent.
>
> ***
>
> **You:**  A former Associate.

(AR. 306).

Under the rules for eligibility, a "Qualified Dependent" for dependents insurance is the

associate's spouse, except while the spouse is on active duty in the armed forces of any country

3

or while the spouse is insured for associate insurance (AR. 288–89).  To be eligible for ependents insurance, the associate must be eligible for associate insurance, must have a "Qualified Dependent," and that "Qualified Dependent" must have been covered for dependents insurance on December 31, 2004 under the prior carrier's plan (AR. 288).  Dependents insurance begins on the first day of the month coinciding with or following the date on which the person is a qualified dependent and the associate meets several requirements, including that "You [the former associate] have enrolled on a form approved by Prudential and agreed to pay the required contributions" (AR. 290).

In the "General Information" section, the booklet-certificate's "Beneficiary Rules" provide in part:  "'Beneficiary' means a person chosen, on a form approved by Prudential, to receive the insurance benefits.  You have the right to choose a Beneficiary.  If there is a Beneficiary for the insurance, it is payable to that Beneficiary."  (AR. 303).  The beneficiary rules allow the associate to change the beneficiary as follows:  "You may change the Beneficiary at any time without the consent of the present Beneficiary.  The Beneficiary change form must be filed through the Employer.  The change will take effect on the date the form is signed."  (*Id.*).  The beneficiary rules further provide: "Any amount of insurance for which there is no Beneficiary at your death will be payable to the first of the following:  Your (a) surviving spouse; (b) surviving child(ren) in equal shares; (c) surviving parents in equal shares; (d) surviving siblings in equal shares; (e) estate."  (*Id.*).

The rules for "When Insurance Ends" as to associate and dependents insurance provide for continued coverage when the insurance would otherwise end for certain reasons.  That provision states in relevant part:

> **Continued Coverage Under the Group Contract for Associates and Their Dependent Spouses:**  If a persons' Face Amount of Insurance under the

Universal Life Coverage and any of the additional provisions made a part of the Universal Life Coverage would, but for these provisions, end because:

(1)     the Associate ceases to be in the Covered Classes for the insurance; or

(2)     the Associate's class has been removed from the Covered Classes for the insurance; or

(3)     with respect to a person who is a dependent spouse, the Associate dies or is divorced from that spouse;

the person's Universal Life Coverage and any of the additional provisions made a part of the Universal Life Coverage will be continued beyond the date it would have ended above.

(AR. 307).

The "Effective Date" of such coverage is "the first day of the month after Prudential receives notice that your Universal Life Coverage, including any of the additional provisions that may be a part of the Universal Life Coverage, under the Group Contract would have ended." (AR. 308).  Continued coverage ends when the Group Contract ends or when "you," which under the Plan is defined as the former associate (AR. 306), fail to pay when due "any contribution that is required to keep a person's insurance in force. . . . But failure to contribute for Dependents Insurance will not cause your Associate Insurance to end." (AR. 308).

Although not discussed by either party, the Plan includes a "Conversion Privilege" that provides, "If a person's face amount of insurance under the Universal Life Coverage ends for the reason stated below, the person may convert to an individual life insurance contract."  (AR. 295). "The reason is all face amount of insurance that applies to you or, with respect to your dependent spouse, to your dependent spouse, under the Group Contract for your class ends by amendment or otherwise."  (*Id.*)

Generally, for the conversion privilege to be available:

A person must apply for the individual contract and pay the first premium by the later of:

  (1)  the thirty-first day after the person's face amount of insurance ends and

  (2)  the fifteenth day after the person has been given written notice of the conversion privilege.  But, in no event may insurance be converted to an individual contract if the person does not apply for the individual contract and pay the first premium prior to the ninety-second day after the person's face amount of insurance ends.

(AR. 296).

  However, in the event of death during the conversion period, the Plan states:

  The amount a person had a right to convert to an individual contract is included in the death benefit if the person dies:

  (1)  Within 31 days after the person's face amount of insurance ends; and

  (2)  While the person has the right to convert the face amount of insurance to an individual contract.

  It is included even if the person did not apply for conversion.

(*Id.*)

## B.  Claim History

  Mr. McKelvey died on April 11, 2011.  On April 15, 2011, a claims coordinator at Prudential sent letters to Mr. McKelvey's family members indicating that, according to Prudential's records, Mr. McKelvey did not name a beneficiary (AR. 50).  Prudential asked the family members to submit Mr. McKelvey's death certificate, a completed beneficiary statement form, and a completed preferential beneficiary statement ("PBS") (*Id.*).  An internal record dated July 21, 2011, provides:  "Please refer to image 28 of the Group Certificate that states that if the insured and employee are divorced, the coverage continues for the insured.  Jack McKelvey was covered under this contract at the time of death and coverage is payable by PBS." (AR. 24).

  Ms. Banks submitted a beneficiary statement dated June 19, 2011, in which she identified herself as the beneficiary of Mr. McKelvey's life insurance (AR. 83).  On June 23, 2011, Ms.

Banks called Prudential and explained that she and Mr. McKelvey had divorced but said that someone at Wal-Mart told her she was entitled to the benefit (AR. 47–48). Prudential informed Ms. Banks that there was no beneficiary on file for Mr. McKelvey and that Prudential would pay benefits based on PBS to the highest surviving heir. According to Prudential's internal records, Ms. Banks indicated that Mr. McKelvey had one daughter and that Ms. Banks would have the daughter complete and submit a PBS form with Mr. McKelvey's death certificate (AR. 48).

On June 23, 2011, Ms. Mace submitted a PBS identifying herself as Mr. McKelvey's daughter (AR. 89–91). Prudential then discovered that Ms. Mace was not listed as a survivor of Mr. McKelvey in his obituary and requested from Ms. Mace legal proof that she is Mr. McKelvey's daughter (AR. 46). In a July 1, 2011, telephone call, Ms. Banks said she thought she was already Mr. McKelvey's beneficiary and confirmed that Ms. Mace was Mr. McKelvey's step-daughter, not his biological or adopted daughter (AR. 43). Prudential explained the PBS function, and Ms. Banks said she would send in a letter explaining her position on the matter. In a second phone call on July 1, 2011, Ms. Banks indicated that she was contesting the claim and said that she was designated as the beneficiary when the policy was taken out, she and Mr. McKelvey never made any changes, she was the owner of the policy, and she wanted benefits paid to her as she had been paying the policy premium all along (AR. 45). Prudential instructed Ms. Banks to send in a letter contesting the claim in writing. Barbara McKelvey, Mr. McKelvey's mother, submitted a PBS dated July 18, 2011, seeking payment of the life insurance benefits on Mr. McKelvey's dependents insurance coverage (AR. 96–106).

By letter dated July 28, 2011, Patricia Moore, a claims coordinator with Prudential, informed Ms. Banks that Prudential was unable to render a benefit determination at that time (AR. 61). Ms. Moore's letter stated that the "beneficiary designation must be in writing on a

form acceptable to Prudential that is properly executed by the insured and filed with the policyholder" (*Id.*).  Ms. Moore's July 28, 2011, letter recited the policy provision for the order of payment to survivors in the event that there is no designated beneficiary.  The letter stated that "you are not the named beneficiary and you do not qualify as the highest-class survivor in order of preference" (*Id.*).  Ms. Moore stated that Prudential would withhold payment to allow Ms. Banks to take action she deemed necessary to protect her interest and instructed Ms. Banks to provide the legal basis for her claim to the insurance proceeds.

Ms. Banks placed a phone call on August 4, 2011, asking for policy information in writing explaining why Prudential did not notify her that she was no longer the policy owner after divorce (AR. 40).  On August 11, 2011, Ms. Banks submitted a complaint to the Arkansas Insurance Department (AR. 110, 116–17).  Ms. Banks attached to her complaint with the Arkansas Insurance Department a letter she had sent to Prudential at some point prior to August 11, 2011, explaining her position that she took out insurance on herself and Mr. McKelvey and that she was named as the beneficiary on Mr. McKelvey's life insurance with Ms. Mace as the beneficiary in the case of both Ms. Banks's and Mr. McKelvey's deaths (AR. 93, 117).  Ms. Banks stated that she never received from the different companies that owned the policy any form for Mr. McKelvey to sign to change her as the beneficiary.  Ms. Banks wrote in her complaint to the Arkansas Insurance Department that bills continued to be mailed to her at her new address after the divorce, and she continued to make payments understanding that she was the beneficiary.  The Arkansas Insurance Department forwarded Ms. Banks's complaint to Prudential and requested that Prudential provide a response, along with a copy of the policy or contract language supporting Prudential's position, a copy of the Declaration page, a copy of the

insurance application, complete payment history, a denial letter, and other supporting documentation (AR. 115).

On August 31, 2011, Ms. Moore on behalf of Prudential wrote to Ms. Banks that Prudential had not yet received a response to its July 28, 2011, letter requesting that she provide the legal basis of her claim (AR. 64).  Prudential again stated that the beneficiary designation "must be in writing on a form acceptable to Prudential that is properly executed by the insured and filed with the policy holder" and repeated that the benefits would be paid in accordance with policy provisions if no beneficiary was designated (*Id.*).  Prudential stated it would withhold the funds for an additional 15 days.  Prudential sent a letter to Barbara McKelvey on August 31, 2011, as well, indicating that it was currently reviewing the information provided by "the competing claimant" (AR. 65).

Ms. Banks's counsel contacted Prudential by letter dated September 8, 2011, indicating that he was assisting Ms. Banks and requesting "any and all documentation concerning this benefit as well as an explanation as to why this has not been paid following her ex-husband's death . . . ."  (AR. 126).  Prudential responded by letter dated September 12, 2011, and provided Ms. Banks's counsel with a copy of the booklet-certificate.  Prudential's letter included an incomplete quote of the "When Insurance Ends" section regarding continued coverage that omitted the language stating that coverage would continue (AR. 66).  Prudential did not provide further explanation and did not mention beneficiary designations.

Also on September 12, 2011, Prudential responded to the Arkansas Insurance Department regarding Ms. Banks's complaint (AR. 144).  Prudential, in its briefing, cites this letter claiming it provided "a straight-forward synopsis regarding why Plaintiff's claim was denied" (Dkt. No. 24, at 5 n.2).  Prudential's letter to the Arkansas Insurance Department attached the Group Policy

Certificate, cited the provision that an eligible dependent is a spouse, and explained that a dependent's Universal Life insurance "will be continued beyond the date it would have ended" due to divorce (AR. 144). Prudential stated in the letter, "Since according to the Certificate Mr. McKelvey was no longer an eligible dependent [after the 2003 divorce] but his universal life insurance continued, he was the de facto owner of this insurance coverage. A beneficiary was not chosen for this insurance and the benefit is payable to the following surviving heir in this order: spouse, child(ren); parents(s); sibling(s); estate." (*Id.*). Prudential wrote that it was not including with its response the original insurance application as requested because "the insurance was established prior to the effective date of Prudential's administration of Wal-Mart's Universal Life insurance program." (AR. 145).

On September 20, 2011, Ms. Banks's counsel responded to Prudential's September 12, 2011, letter and stated that he believed he received only a partial copy of the policy (AR. 148). Citing his review of the information that was provided, Ms. Banks's counsel asked how Prudential could deny the payment to Ms. Banks if she was the designated beneficiary and all premiums were paid to date. Ms. Banks's counsel asked for the remainder of the policy information to determine whether to instigate litigation. On October 20, 2011, Prudential wrote to Ms. Banks's counsel and stated that Prudential was providing another 15 days to undertake action to protect Ms. Banks's interest in the claim; Prudential did not address counsel's questions raised in his September 20, 2011, letter. Also on October 20, 2011, Prudential wrote to Ms. Banks reiterating that a competing claim had been filed and stating that Prudential would contact Ms. Banks within 15 days to advise of the status of her claim (AR. 67–68).

On October 31, 2011, Ms. Banks's counsel wrote to Prudential and made clear that Ms. Banks claimed legal entitlement to the benefit "as the named beneficiary on the policy." (AR.

151).  Ms. Banks's counsel further wrote, "I have requested from your office a copy of the change in beneficiary form executed by Jack D. McKelvey, which has yet to be provided.  If the beneficiary form [has] never been changed, Mrs. McKelvey is the legal rightful beneficiary under this policy of insurance.  Providing me a copy of the change in beneficiary form executed by Mr. McKelvey, if it exists, would expedite this claim and process." (*Id.*).  Prudential responded on November 2, 2011, that it was still unable to render a benefit determination at that time.  Prudential wrote that Mr. McKelvey did not have a beneficiary on file and quoted the provision regarding payment to surviving heirs in the absence of a designated beneficiary. Prudential stated that it would withhold funds for an additional 15 days for Ms. Banks's counsel to "legally restrain [Prudential] from releasing the proceeds as per the policy provisions."  (AR. 69).  According to Prudential's internal records, Prudential determined on November 18, 2011, to pay the proceeds to Mr. McKelvey's mother (AR. 8).  Prudential states in part in this internal record, "The insured was the owner of the policy since the employee and the insured were divorced" (*Id.*).

On December 2, 2011, Ms. Banks's counsel responded to Prudential's November 2, 2011, letter, in response to Prudential's statement that no beneficiary was designated, and wrote: "I have an absolute belief that this is false."  (AR. 153).  Ms. Banks's counsel requested the original application for the insurance and stated that Ms. Banks was present when the application was executed and saw her name listed as the beneficiary.  Prudential's internal records and emails reflect that on December 6, 2011, a Prudential employee asked another Prudential employee to look into counsel's request for the application, with one email stating:  "We do not have anything on file for him.  There is no beneficiary form or application."  (AR. 7, 154–55). Prudential sent Ms. Banks's counsel a letter on December 7, 2011, that enclosed "a copy of the

screen print showing no beneficiary was on file for McKelvey." (AR. 70). That letter informed Ms. Banks's counsel that the proceeds were paid to Mr. McKelvey's mother on November 21, 2011. Prudential's internal records show that Prudential continued to attempt to locate the enrollment forms (AR. 4, 154).

Ms. Banks's counsel responded on December 12, 2011, and again requested the original application, repeating that the original application listed Ms. Banks as the beneficiary of Mr. McKelvey's dependents insurance coverage (AR. 157). Prudential located or obtained the original enrollment and beneficiary forms sometime between December 16 and 19, 2011, and forwarded copies to Ms. Banks's counsel on December 19, 2011 (AR. 2–5, 71). Prudential did not address in that letter the significance of the enrollment forms in any way; it simply listed an incomplete quote of the continued coverage provision.

On December 29, 2011, Ms. Banks's counsel wrote that he believed that Prudential misunderstood Ms. Banks's claim, reiterated that Ms. Banks was listed as the beneficiary, and noted that Prudential had accepted from Ms. Banks premiums on Mr. McKelvey's dependents insurance coverage for 15 years (AR. 167). Ms. Bank's counsel wrote, "Nothing in your policy allows your company to summarily change the beneficiary based on any policy language that I have reviewed," and demanded payment within 10 days (*Id.*).

Prudential wrote to Ms. Banks's counsel on December 30, 2011, providing the explanation that Ms. Banks and Mr. McKelvey were divorced prior to Mr. McKelvey's death, with an incomplete reference to the provisions for when insurance ends and continued coverage (AR. 72). Addressing the enrollment form for the first time, Prudential acknowledged that the enrollment form named Ms. Banks as the beneficiary but stated, "The enrollment form that was dated March 1995 was signed by Ms. McKelvey naming herself as the beneficiary for her spouse

at that time.   Spouse coverage ended after Mr. and Mrs. McKelvey were divorce [sic], Mr. McKelvey became the owner of the policy her [sic] did not name a beneficiary for his policy." (*Id.*).   The next correspondence in the record is a February 17, 2012, letter from Ms. Banks's counsel serving Prudential with Ms. Banks's complaint (AR. 171).

## II.   Standard of Review

Under ERISA § 502, a participant in or beneficiary of an ERISA plan may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."   29 U.S.C. § 1132(a)(1)(B).   *See Outzen v. Fed. Deposit Ins. Corp., ex rel. State Exam'r of Banks*, 948 F.2d 1184, 1188 (10th Cir. 1991) ("The overall policy of ERISA is to protect participants' expected payments.").   The parties agree on the standard of review for eligibility determinations under an ERISA plan that, as is the case here, grants the administrator discretionary power: "Where a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations, . . . the administrator's decision is reviewed only 'for abuse . . . of his discretion,' and the administrator's interpretation of uncertain terms in a plan 'will not be disturbed if reasonable.'"   *King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 998–99 (8th Cir. 2005) (citation omitted) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

Courts have identified several factors to be considered in determining the reasonableness of the plan administrator's decisions.   *King*, 414 F.3d at 999.   "These include 'whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have

interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.'" *Id.* (quoting *Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)). "These so-called '*Finley* factors' inform our analysis, but [t]he dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination." *Id.* (internal quotation marks omitted) (quoting *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir. 1989)). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010); *see also Rutledge v. Liberty Life Assur. Co.*, 481 F.3d 655, 659 (8th Cir. 2007) ("[W]e must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." (internal quotation marks omitted)).

Abuse-of-discretion review "ensures that an administrator's decision is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *King*, 414 F.3d at 999–1000 (internal quotation marks omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 887 (8th Cir. 2002). The Court "must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999).

### III.    Analysis

Ms. Banks characterizes Prudential's decision as voiding Ms. Banks's beneficiary designations for Mr. McKelvey's dependents life insurance.  Ms. Banks argues there is no language in the Plan requiring Mr. McKelvey to designate a new beneficiary following his divorce from Ms. Banks.  Prudential argues that it did not abuse its discretion in interpreting the Plan to determine:  (1) that once Ms. Banks and Mr. McKelvey were divorced, Mr. McKelvey was no longer Ms. Banks's spouse and, therefore, was no longer an eligible dependent under the terms of the Plan; (2) that Mr. McKelvey's life insurance coverage continued after the divorce, under the terms of the Plan, with Mr. McKelvey as the *de facto* owner of the coverage; and (3) that there was no valid beneficiary designation for the life insurance coverage on Mr. McKelvey at the time of his death, and as such, the beneficiary rules of the Plan applied, directing payment of the life insurance proceeds to his closest surviving heir (Dkt. No. 24, at 11).

The Court agrees with Prudential that it was not an abuse of discretion in interpreting the Plan to determine that Mr. McKelvey was no longer an eligible dependent spouse under the terms of the Plan after he and Ms. Banks divorced.  The Court further agrees that a determination that Mr. McKelvey's coverage continued after the divorce per the Plan's provision for continued coverage was reasonable and not an abuse of discretion, although Prudential's failure to explain through reference or citation to Plan documents its assertion that Mr. McKelvey became the *de facto* owner of the coverage presents a challenge to the reviewing Court.  The Court also concludes that, after review of the Plan documents and based upon the deferential standard of review, Prudential did not abuse its discretion in determining that there was no valid beneficiary designation for Mr. McKelvey's life insurance on file with Prudential at the time of his death. Therefore, the Court concludes there was no abuse of discretion in Prudential's determining

eligibility for benefits under the Plan and in denying Ms. Banks's claim for life insurance benefits.

## A.    Prudential's Interpretation And Benefits Determination

In response to Ms. Banks's argument, Prudential asserts that it did not void a beneficiary designation.  Rather, Prudential suggests that there was never a valid beneficiary designation, noting that it was Ms. Banks who made the election on Mr. McKelvey's life insurance in 1995 and stating, "Plaintiff, *not* Mr. McKelvey, then signed the Dependent Optional Life insurance enrollment form, making the alleged beneficiary designation that is now the source of Plaintiff's claim."  (Dkt. No. 24, at 14).  Prudential contends that the life insurance coverage on Mr. McKelvey "was not, ultimately, subject to Plaintiff's control."  (*Id.*).

As an initial matter, the Court notes that Prudential did not originally contend that Ms. Banks's beneficiary designation was ineffective.  Rather, Prudential repeatedly asserted the absence of any beneficiary designation on file.  Prudential maintained this position at the time it paid the benefits to Mr. McKelvey's mother in November 2011.  It was only after this, in December 2011, that Prudential eventually located Ms. Banks's original 1995 beneficiary designations, after which Prudential indicated in its December 30, 2011, letter to Ms. Banks's counsel that this designation was somehow ineffective.  Prudential's representation to Ms. Banks's counsel on December 30, 2011 is not inconsistent with the position taken by Prudential prior to locating the original 1995 beneficiary designation.  In August 31, 2011, correspondence to Ms. Banks, Prudential stated that "[t]he beneficiary designation must be in writing *on a form acceptable to Prudential* that is *properly executed by the insured* and filed with the policyholder."  (AR. 64) (emphasis added).  Ultimately, this determination by Prudential satisfies this Court that there was no abuse of discretion.

## B.   The Language Of The Plan Documents

As described above, the Plan defines "You" as the former associate—Ms. Banks in this case—and the Plan's beneficiary rules state:  "You have the right to choose a Beneficiary.  If there is a Beneficiary for the insurance, it is payable to that Beneficiary."  (AR. 303).

Further, the rules for obtaining dependents insurance provide in part that dependents insurance becomes effective after "You have enrolled on a form approved by Prudential . . . ."  (AR. 290).  Under the rules for eligibility, a "Qualified Dependent" for dependents insurance is the associate's spouse, except while the spouse is on active duty in the armed forces of any country or while the spouse is insured for associate insurance (AR. 288–89).  To be eligible for dependents insurance, the associate must be eligible for associate insurance, the associate must have a "Qualified Dependent," and that "Qualified Dependent" had to have been covered for dependents insurance on December 31, 2004 under the prior carrier's plan (AR. 288).

At the time Ms. Banks took out the policy, the Plan called for Ms. Banks, the former associate, to enroll for dependents insurance and designate beneficiaries.  Moreover, the enrollment form Ms. Banks signed at the time she enrolled for dependents insurance required an associate signature, not the signature of the dependent spouse (AR. 178).  Ms. Banks and Mr. McKelvey divorced in 2003, well before December 31, 2004, but failed to inform Prudential of their divorce until the time of Mr. McKelvey's death.  It is not clear that, under the terms of the Plan, Mr. McKelvey was eligible for dependents insurance at any time under this Plan administered by Prudential by virtue of the language of this provision.

Further, the Plan states that dependents insurance begins on the first day of the month coinciding with or following the date on which the person is a qualified dependent and the associate meets several requirements, including that "You [the former associate] have enrolled

on a form approved by Prudential and agreed to pay the required contributions" (AR. 290). There is no indication here that the form initiating dependent spouse coverage was approved by Prudential, and Prudential appears to take issue with the form executed by Ms. Banks by arguing that "[p]laintiff, *not* Mr. McKelvey, then signed the Dependent Optional Life insurance enrollment form, making the alleged beneficiary designation that is now the source of Plaintiff's claim." (Dkt. No. 24, at 14).

Ms. Banks argues that, if she were required to file paperwork after her divorce from Mr. McKelvey, Prudential failed to notify her.  Prudential responds that it had no notice of the divorce until after Mr. McKelvey's death and that Ms. Banks was not entitled to "specialized notification" of "the specific impact of a plan's terms on them based on their personal circumstances." (Dkt. No. 24, at 12–13).  *See Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 985 (8th Cir. 1992) ("The great majority of courts . . . have not imposed upon an ERISA plan fiduciary the duty individually to notify participants and/or beneficiaries of the specific impact of the general terms of the plan upon them.").  The Court agrees with Prudential; its position is consistent with controlling law.

Even if Mr. McKelvey were eligible for dependents insurance under the Plan administered by Prudential, in its initial determination regarding this matter and consistently in addressing this matter, Prudential has taken the position that Mr. McKelvey's dependents insurance coverage ended upon divorce.  This is reflected in Prudential's briefing and in Prudential's December 30, 2011, letter to Ms. Banks's counsel, stating that "[s]pouse coverage ended" after the divorce (AR. 72).  The Court agrees that Mr. McKelvey was no longer a qualified dependent as defined in the Plan after his divorce.

18

An internal Prudential record dated July 21, 2011, provides:  "Please refer to image 28 of the Group Certificate that states that if the insured and employee are divorced, the coverage continues for the insured.  Jack McKelvey was covered under this contract at the time of death and coverage is payable by PBS." (AR. 24).  Page 28 of the Group Certificate refers to the "Effective Date" of the Continued Coverage Under the Group Contract for Associates and Their Dependent Spouses (AR. 307–08).  No party disputes that Prudential first received notice of Mr. McKelvey and Ms. Banks's divorce, the qualifying event for dependent spouse continuing coverage, when Prudential received notice of Mr. McKelvey's death.  The Effective Date for the dependent spouse continuing coverage was "the first day of the month after Prudential receive[d] notice" of these events.

Prudential contends that Mr. McKelvey was required to designate a beneficiary after his and Ms. Banks's divorce because he became "the *de facto* owner of the insurance coverage." The Court acknowledges that Prudential's explanation for its determination of this change of ownership of the policy is thin.  The sole explanation offered in the record and in Prudential's briefing is that, because Mr. McKelvey was no longer an eligible dependent after divorce but his universal life insurance continued, he was the *de facto* owner of his insurance coverage.  Neither Prudential's internal records nor its briefing provide a meaningful explanation for its interpretation that the dependent spouse continuing coverage provision made Mr. McKelvey the owner of the dependents insurance coverage Ms. Banks took out on him.

In one sentence in its briefing, Prudential states that Mr. McKelvey's life insurance coverage "continued as a form of independent coverage," again citing the Continued Coverage provision (Dkt. No. 24, at 14).  The Continued Coverage provision does not include any language indicating that dependent spouse continuing coverage continues "as a form of

independent coverage."   Referring to coverage for associates and their dependent spouses, the Plan simply states the person's insurance coverage continues, with no mention of dependents insurance converting to an individual policy or the need for a new beneficiary designation.  The Continued Coverage provision states, in regard to contributions, that "[t]he amount of the contributions required to keep the insurance in force will be different than the amount you have been contributing.  Contributions will be payable directly to Prudential."  (AR. 308).  Nothing in the Continued Coverage provision refers to automatic conversion.

In fact, the possibility of conversion to independent coverage appears to be addressed in an entirely separate portion of the Plan that Prudential has not discussed—the Plan's "Conversion Privilege," which provides that, under certain limitations, an associate or dependent spouse may convert their coverage to an individual life insurance contract and addresses the situation when death occurs during the conversion period (AR. 295–96).

Unlike the Conversion Privilege, the Continued Coverage provision makes no reference to converting to an individual life insurance contract.   These are entirely separate policy provisions.  The distinction between continued coverage and the conversion privilege is further evident in the Plan's language that the death benefit is payable upon written proof of death if the person dies "while a Covered Person under the Universal Life Coverage," "while under the extension for the Universal Life Coverage," or within the timeframe under which person may convert to an individual contract (AR. 291).

While Prudential's "*de facto* owner" position is difficult to reconcile with the Plan language on this administrative record, it remains that, when notified of Mr. McKelvey's death and contacted by Ms. Banks, Prudential informed Ms. Banks that there was no beneficiary on file for Mr. McKelvey and that Prudential would pay benefits based on PBS to the highest surviving

heir (AR. 47–48).  In the "General Information" section, the booklet-certificate's "Beneficiary Rules" provide in part:   "'Beneficiary' means a person chosen, *on a form approved by Prudential*, to receive the insurance benefits.  You have the right to choose a Beneficiary.  If there is a Beneficiary for the insurance, it is payable to that Beneficiary."  (AR. 303).  The beneficiary rules allow the associate to change the beneficiary as follows:  "You may change the Beneficiary at any time without the consent of the present Beneficiary.  The Beneficiary change form must be filed through the Employer.  The change will take effect on the date the form is signed."  (*Id.*).  The beneficiary rules further provide:  "Any amount of insurance for which there is no Beneficiary at your death will be payable to the first of the following:  Your (a) surviving spouse; (b) surviving child(ren) in equal shares; (c) surviving parents in equal shares; (d) surviving siblings in equal shares; (e) estate."  (*Id.*).

By letter to Ms. Banks dated July 28, 2011, Ms. Moore of Prudential stated that the "beneficiary designation must be in writing on a form acceptable to Prudential that is properly executed by the insured and filed with the policyholder" (AR. 61).  Ms. Banks was never able to produce a beneficiary designation in writing on a form acceptable to Prudential that was executed by the insured and filed with the policy holder.

For these reasons, this Court cannot say that on this administrative record Prudential's determination on eligibility for benefits under the Plan, and in denying Ms. Banks's claim for life insurance benefits, was an abuse of discretion.  Prudential's decision, when considered in the light of the *Finley* factors, is consistent with the goals of the Plan, is not an interpretation that renders any language of the Plan meaningless or internally inconsistent, is not an interpretation that conflicts with the substantive or procedural requirements of the ERISA statute, does not indicate an inconsistent interpretation of the words at issue, and is not an interpretation contrary

to the clear language of the Plan.  *See Finley*, 957 F.2d at 621–22.  Where all parties agree that the abuse of discretion standard applies and where Prudential has offered a reasonable interpretation of disputed provisions, this Court may not replace that with an interpretation of its own, even if the Court would interpret the language differently as an original matter.  *See Manning*, 604 F.3d at 1038.

\*        \*        \*

For the foregoing reasons, the Court finds that Prudential did not abuse its discretion in disregarding Ms. Banks's beneficiary designation for Mr. McKelvey's dependents insurance.

SO ORDERED this the 30th day of March, 2015.

_____
Kristine G. Baker
United States District Judge